Delores Ferrer DACORON, Petitioner,

v.

Jesse BROWN, Secretary of Veterans Affairs, Respondent.

No. 92–789.

United States Court of Veterans Appeals.

Decided Jan. 27, 1993.

Delores Ferrer Dacoron, pro se.

No pleadings were filed on behalf of the respondent.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The pro se petitioner is the widow of deceased veteran Rufino Dacoron, who, during his lifetime, had established service connection for disabilities incurred during his service with the New Philippine Scouts from July 16, 1946, to May 10, 1949. Upon

the veteran's death, the petitioner began receiving Department of Veterans Affairs (formerly Veterans' Administration) (VA) dependency and indemnity compensation (DIC) under 38 U.S.C. § 1310(a) (formerly § 310) (surviving spouse entitled to DIC where veteran dies after December 31, 1956, from a service-connected disability). Pursuant to 38 U.S.C. § 107(b), the payment of any authorized VA benefits on account of service in the New Philippine Scouts "shall be made at a rate in pesos as is equivalent to $0.50 for each dollar authorized". Therefore, the petitioner's DIC benefits have been limited to the equivalent of 50 cents per dollar of entitlement.

The petitioner petitions the Court for an extraordinary writ, pursuant to 28 U.S.C. § 1651(a) and Rule 21 of the Court's Rules of Practice and Procedure, in order to require the Secretary of Veterans Affairs (VA Secretary) to pay her the full dollar value of her DIC benefits. As grounds for the writ, she asserts that the Armed Forces Voluntary Recruitment Act of 1945, Pub.L. 79–190 (1945 Recruitment Act), section 14 of which provided the authority for her husband's enlistment in July 1946 in the New Philippine Scouts, is unconstitutional, and that it was wrongly applied to her husband, who, at the time of his July 1946 enlistment, had previously served in the United States Army and was a citizen of the United States. The Court referred the petition to a three-judge panel because it raised significant issues of first impression regarding the Court's exercise of its authority under the All Writs Act, 28 U.S.C. § 1651, and the constitutionality of 38 U.S.C. § 107(b) and the 1945 Recruitment Act.

## I. BACKGROUND

In her petition, received by the Court on May 6, 1992, the petitioner requested "review by the Court in [the] question of [the] unconstitutionality of the Public Law 190 and the wrong application of reenlistment to [a] citizen of the United States [as to] which the Public Law 190 should not be applied[;] attention is invited to my letter of December 16, 1991." Attached to the petition was a copy of a December 16, 1991, letter from the petitioner to the VA Regional Office (RO) in Manila requesting review of the rate of the petitioner's DIC payments. The petitioner stated that the veteran had served in the regular U.S. Army from February 9, 1941, to April 2, 1945; that on April 3, 1945, he had reenlisted; that on July 16, 1946, he had again reenlisted, not knowing that his reenlistment was under section 14 of Public Law 79–190, pertaining to the New Philippine Scouts, but rather had believed that he would be "given consideration as a regular member of the Armed Forces of the United States"; and that he had been naturalized as a citizen of the United States on October 9, 1946. The petitioner stated that "[t]he enlistment on July 16, 1946 should not be under Public Law 190 because he was a Citizen of the United States at the time of the reenlistment", and she requested that, if the RO did not award her the increased payments, the letter be considered a Notice of Disagreement for purposes of initiating appeal to the Board of Veterans' Appeals (BVA or Board).

In an undated letter in response to the petitioner's December 1991 letter, the VARO adjudication officer stated that the veteran's service as certified by the U.S. Department of the Army had comprised the following enlistments:

February 9, 1941 to April 2, 1945—Philippine Scout

April 3, 1945 to June 30, 1946—Army of the U.S.

July 16, 1946 to May 10, 1949—New Philippine Scout

The adjudication officer stated that the veteran's disabilities had been incurred during his last period of service "under Public Law 190, 79th US Congress", and that "[t]his law provided payment of 0.50 cents for each dollar of entitlement". The letter concluded: "We are not sending you any Statement of the Case since there is no recent decision in your case which is appealable." The petitioner thereafter filed the present petition with this Court.

## II. ANALYSIS

### A. Nature of the Relief Sought

■ The Court has authority under 28 U.S.C. § 1651(a) to issue writs of manda-

mus in aid of its jurisdiction. *See Erspamer v. Derwinski*, 1 Vet.App. 3, 7 (1990). However, the Court has noted that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations", and that, therefore, the Court will issue extraordinary writs only when the petitioner satisfies a demanding two-part test. *Id.* at 9 (quoting *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976)); *see also Nagler v. Derwinski*, 1 Vet.App. 297, 302–03 (1991). The petitioner must demonstrate, first, that he or she lacks an adequate alternative means of obtaining the relief sought, and, second, that his or her right to the writ is "clear and indisputable". *Erspamer*, 1 Vet.App. at 9; *Nagler*, 1 Vet.App. at 303. If a petitioner fails to satisfy either criterion, the writ will be denied.

In order to determine whether the petitioner here has satisfied these two requirements, it is necessary to determine the precise nature of her claims. In her petition, she states that she desires "review by the Court in [the] question of [the] unconstitutionality of the Public Law 190 and the wrong application of reenlistment to [a] citizen of the United States [as to] which the Public Law 190 should not be applied". Viewing this statement in connection with the assertions in her December 16, 1991, letter to the RO, that the veteran's July 16, 1946, reenlistment should not be considered an enlistment under Pub.L. No. 79–190 because he was a U.S. citizen, it appears that she seeks to challenge the constitutionality of the 1945 Recruitment Act and its applicability in this case. However, the petition can also be construed as challenging the constitutionality of the statutory provisions in 38 U.S.C. § 107(b) providing that benefits paid on account of service in the New Philippine Scouts under the 1945 Recruitment Act shall be paid at a rate of 50 cents per dollar of entitlement. This is particularly so because the RO adjudication officer, in his letter to the petitioner, erroneously stated that the 1945 Recruitment Act (rather than 38 U.S.C. § 107(b)) "provided payment of 0.50 cents for each dollar of entitlement."

Section 14 of the 1945 Recruitment Act provided the authority for the Secretary of War to enlist in the Philippine Scouts 50,000 men for service in the Philippine Islands, Japan, and elsewhere in the Far East. Nothing in the 1945 Recruitment Act pertained to the provision of VA benefits to veterans of such service. Thus, although the petition expressly states a challenge only to the constitutionality and application of the 1945 Recruitment Act, it appears that the petitioner also seeks to challenge section 107(b)'s provision for payment of only 50 cents per dollar of entitlement, which the RO had erroneously stated was a provision of the 1945 Recruitment Act. In light of this possibility, the Court will consider the petition as challenging the constitutionality and application of 38 U.S.C. § 107(b) as well as the 1945 Recruitment Act.

For purposes of determining whether the petitioner has adequate alternative means of obtaining the relief sought, the Court will view the petitioner's constitutional claims separately from her claims of misapplication of a statutory provision, because different ranges of remedies are available with respect to the two types of claims.

### B. Constitutional Claims

This Court has "exclusive jurisdiction to review a decision of the Board of Veterans' Appeals". 38 U.S.C. § 7252(a) (formerly § 4052). The Board has jurisdiction to review "all questions in a matter which under [38 U.S.C. § 511(a)] are subject to decision by the [VA] Secretary". 38 U.S.C. § 7104(a) (formerly § 4004). Subsection (a) of 38 U.S.C. § 511 directs the VA Secretary to decide "all questions of law and fact necessary to a decision by the [VA] Secretary under a law that affects the provision of benefits by the [VA] Secretary to veterans or the dependents or survivors of veterans", and subsection (b) provides that such decisions may not be reviewed by any other official or any court with the following exceptions: matters subject to 38 U.S.C. § 502 (allowing suit in the U.S. Court of Appeals for the Federal Circuit challenging the lawfulness of VA Secretary's promulgation of a regulation); mat-

ters covered by 38 U.S.C. §§ 1975 and 1984 (formerly §§ 775 and 784) (allowing suit in U.S. district court on claims pertaining to certain VA-administered life insurance benefits); matters arising under chapter 37 of title 38, U.S.Code (relating to VA housing and small business loans); and matters which, under chapter 72 of title 38, U.S.Code, are subject to review by this Court.

 Therefore, the VA Secretary is statutorily required to make a determination on any claim "under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans", and such determinations are subject to review, judicial or otherwise, only in the limited situations expressly provided in 38 U.S.C. § 511(b). No other administrative or judicial bodies are authorized to make determinations "under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." Therefore, a claim that 38 U.S.C. § 107(b) was wrongly applied to the veteran in the present case would be cognizable, if at all, only by the VA Secretary, subject to review by the BVA and then this Court. Hence, the determination whether the petitioner has adequate alternative remedies as to that claim is necessarily limited to whether she has adequate administrative remedies before VA, subject to the ordinary procedures for review by the BVA and this Court.

In contrast, a claim that a statutory provision is unconstitutional may be raised in U.S. district court, even if such statute is "a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans". 38 U.S.C. § 501(a). In *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court discussed the availability of judicial proceedings to review claims that a statute pertaining to veterans benefits was unconstitutional. At the time of that decision, which was prior to the creation of this Court, the prohibition on judicial review of decisions of the VA Secretary was contained in 38 U.S.C. § 211(a) (1970), which was virtually identi-

cal to current 38 U.S.C. § 511, except that it did not contain the exceptions allowing review of the VA Secretary's decisions by the Federal Circuit under section 502 or review of BVA decisions by this Court under chapter 72 of title 38. In determining whether 38 U.S.C. § 211(a) then prohibited a claimant from bringing a constitutional challenge to statutory provisions of title 38 in federal district court, the Supreme Court stated:

Plainly, no explicit provision of § 211(a) bars judicial consideration of appellee's constitutional claims. That section provides that "the *decisions* of the Administrator [the predecessor of the Secretary of Veterans Affairs] on any question of law or fact *under* any law administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no ... court of the United States shall have power or jurisdiction to review any such decision...." (Emphasis added.) The prohibitions would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact made "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts. Appellee's constitutional challenge is not to any such decision of the *Administrator*, but rather to a decision of *Congress* to create a statutory class entitled to benefits.... Thus, as the District Court stated: "The questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged."

*Johnson*, 415 U.S. at 367, 94 S.Ct. at 1165–66 (emphasis in original).

Although the enactment in 1988 of the Veterans' Judicial Review Act, Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988) (VJRA), which created this Court, opened up to judicial review a great many claims as to which review had previously been prohibited by 38 U.S.C. § 211(a), nothing in the VJRA or in the current provisions of 38

U.S.C. § 511(a) changes the Supreme Court's above-quoted analysis in *Johnson* as to whether a constitutional challenge to a statute governing VA benefits is governed by the provisions of old section 211(a) or current section 511(a), or whether such a challenge may be brought in U.S. district court without regard to those statutory provisions. A claim which alleges only the unconstitutionality of a statute is not a claim "under a law that affects the provision of benefits by the Secretary" under § 511(a), but rather is a claim under the Constitution of the United States. As such, it is beyond the purview of section 511(a). Nothing in title 38 prohibits a constitutional challenge to any of the provisions of that title from being litigated in U.S. district court. Indeed, such a challenge, specifically to 38 U.S.C. § 107(a) and (b), was brought in *Quiban v. Veterans Administration*, and both the district court (713 F.Supp. 436, 437 (1989)) and the Court of Appeals for the D.C. Circuit (928 F.2d 1154, 1159 (D.C.Cir.1991)) sustained the district court's jurisdiction to hear the constitutional claim.

Of course, nothing in the above analysis implies that this Court does not have power to review claims pertaining to the constitutionality of statutory and regulatory provisions. Such authority is inherent in the Court's status as a court of law (*see Freytag v. Comm'r of Internal Revenue*, —— U.S. ——, —— - ——, 111 S.Ct. 2631, 2644–45, 115 L.Ed.2d 764, 786–87 (1991) (Article I courts are "courts of law")), and is expressly provided in 38 U.S.C. § 7261(a)(1) (formerly § 4061): "[T]he Court of Veterans Appeals, to the extent necessary ... shall ... decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the [VA] Secretary...."

■ However, this Court is a court of appellate, rather than original, jurisdiction. Claims come to this Court on appeal from determinations of the BVA for the VA Secretary (*see* 38 U.S.C. § 7104(a) (decisions on appeal to the VA Secretary from agency of original jurisdiction shall be made by BVA)), under laws pertaining to the provision of benefits by the VA Secretary. Therefore, constitutional challenges will ordinarily be presented to this Court only in the context of a proper and timely appeal taken from such decision made by the VA Secretary through the BVA. Although this Court also has authority to reach constitutional issues in considering petitions for extraordinary writs under 28 U.S.C. § 1651(a), the Court may, as noted above, exercise such authority only when a claimant has demonstrated that he or she has no adequate alternative means of obtaining the relief sought and is clearly and indisputably entitled to such relief. *See Erspamer, supra.* Where, as here, a claimant remains free to bring a challenge to the constitutionality of a statute in U.S. district court, she has not demonstrated that she lacks adequate alternative means of obtaining the relief sought. *See U.S. ex rel Girard Trust Co. v. Helvering*, 301 U.S. 540, 544, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937) ("writ of mandamus may not be employed to secure the adjudication of a disputed right for which an ordinary suit affords a remedy equally adequate, and complete"); *cf. Ganem v. Heckler*, 746 F.2d 844, 855 (D.C.Cir.1984) (mandamus may issue only if "no other adequate remedy, either judicial or administrative, [is] available").

There is one other aspect of the petitioner's potential constitutional claims. In her December 1991 letter to the RO, the petitioner asserted that those statutory provisions should not be applied because her husband "was a Citizen of the United States at the time of reenlistment". However, in the same letter, the petitioner stated that her husband was naturalized as a citizen of the United States on October 9, 1946, which occured *after* his July 1946 reenlistment. This might present a further constitutional question as to whether the veteran suffered a constitutional deprivation when his citizenship status changed but his service status did not.

Having determined that the petitioner has not demonstrated that she lacks adequate alternative remedies with respect to constitutional claims, it is unnecessary to

reach the issue of whether she has shown clear and indisputable entitlement to the writ. The Court notes, however, that, although it has not directly addressed the constitutionality of 38 U.S.C. § 107(b), in *Dela Pena v. Derwinski*, 2 Vet.App. 80 (1992), the Court, in reliance on the D.C. Circuit's opinion in *Quiban, supra*, has upheld, against a constitutional due process/equal protection challenge, the provisions of subsection (a) of 38 U.S.C. § 107, which are virtually identical to the provisions of subsection (b), but which apply, rather than to the New Philippine Scouts, to "service before July 1, 1946, in the organized forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July, 26, 1941". 38 U.S.C. § 107(a).

### C. Misapplication of the 1945 Recruitment Act

■ With respect to the petitioner's remaining claims—that the 1945 Recruitment Act and 38 U.S.C. § 107(b) were wrongly applied to her husband, who she claimed was a U.S. citizen at the time of his enlistment—it is less clear whether the petitioner has adequate alternative remedies. The 1945 Recruitment Act is not itself "a law that affects the provision of benefits by the [VA] Secretary". As noted above, section 14 of that Act authorized the Secretary of War to recruit 50,000 men for service in the Philippine Scouts, but it did not contain any provision relating to veterans benefits. Therefore, 38 U.S.C. § 511(a) does not expressly preclude courts or officials other than the VA Secretary from reviewing a claim that the 1945 Recruitment Act should not have been considered the authority for the veteran's re-enlistment in July 1946.

In its letter in response to the petitioner's December 1991 letter, the VARO stated that the U.S. Department of the Army had certified that the veteran's period of service from July 16, 1946, to May 10, 1949, was with the New Philippine Scouts pursuant to the 1945 Recruitment Act. As this Court held in *Duro v. Derwinski*, 2 Vet. App. 530, 532 (1992), the VA Secretary has

lawfully promulgated regulations making the findings of service departments, including the Department of the Army, "binding on VA for purposes of establishing service in the U.S. Armed Forces." *See* 38 C.F.R. § 3.203 (1991). Furthermore, 38 C.F.R. § 3.8(b) (1991) provides: "All enlistments and reenlistments of Philippine Scouts in the Regular Army between October 6, 1945, and June 30, 1947, inclusive, were made under the provisions of Pub.L. 190 as it constituted the sole authority for such enlistments during that period." The petitioner here seeks a determination that, notwithstanding the service department's verification that her husband's July 1946 enlistment was with the New Philippine Scouts pursuant to the 1945 Recruitment Act, VA should consider that enlistment to have been with the regular U.S. Armed Forces. That claim by the petitioner thus amounts to a claim of error in the service department's findings that her husband's enlistment in July 1946 was pursuant to the 1945 Recruitment Act.

Section 1552(a) of title 10, U.S.Code, provides in part:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

10 U.S.C. § 1552(a). Pursuant to 10 U.S.C. § 1552(b), no such corrections may be made unless "the claimant or his heir or legal representative" files a timely request for such correction of military records. There is no indication in the petition filed with this Court that the petitioner has applied to the appropriate board for correction of military records for the "correction" of the Department of the Army records to reflect her contention that the veteran's enlistment in July 1946 was with the regular U.S. Army rather than with the New Philippine Scouts pursuant to the 1945 Recruitment Act. In view of the availability of such a process for the correction of the veteran's military records, the Court holds

that the petitioner has failed to demonstrate that she lacks adequate alternative remedies with respect to her claim that the 1945 Recruitment Act was wrongly applied to her husband's July 1946 enlistment. Therefore, the petition for an extraordinary writ must be denied with respect to that claim.

There is another reason why the petition for extraordinary relief based on this claim must be denied. Even if it were demonstrated that the veteran's July 1946 enlistment could not have been pursuant to the 1945 Recruitment Act if he had been a U.S. citizen at the time of his enlistment, the petitioner would not have demonstrated clear and indisputable entitlement to a writ because she has failed to demonstrate that the veteran was in fact a U.S. citizen at the time of his July 1946 enlistment.

D. Misapplication of 38 U.S.C. § 107(b)

■ Finally, the claim that 38 U.S.C. § 107(b) was misapplied as to her benefits is a claim of disagreement with a decision of the VA Secretary "under a law that affects the provision of benefits by the Secretary to veterans or the dependents of veterans", and, therefore, pursuant to section 511(a), that claim may not be brought in U.S. district court or reviewed by any official or court other than a VA regional office, the BVA, on behalf of the Secretary, or this Court. Therefore, if any adequate alternative remedies exist with respect to that claim, they exist at the VA administrative level. The documents attached to the petition indicate that the petitioner, in her December 1991 letter to the RO, requested reconsideration of the rate of payment of her DIC benefits, and that the RO, in reply, stated that she had not demonstrated entitlement to receive DIC benefits at the full rate of entitlement and that there was then no adjudicative agency determination which she could appeal to the BVA. Consequently, with respect to that claim, it appears that the petitioner does not have any adequate alternative remedies at the VA administrative level or in U.S. district court.

However, the petition must also be denied with respect to that claim because the petitioner has failed to demonstrate clear and indisputable entitlement to the writ. A showing of clear and indisputable entitlement to a writ on the grounds that 38 U.S.C. § 107(b) was wrongly applied to the petitioner's husband would require the petitioner to demonstrate that section 107(b) does not, by its terms, apply to her husband's period of service beginning in July 1946. Section 107(b) provides that any authorized payments made on account of "[s]ervice in the [New] Philippine Scouts under section 14 of the [1945 Recruitment Act]" "shall be made at a rate in pesos as is equivalent to $0.50 for each dollar authorized." As noted in part II.C., above, VA has concluded, pursuant to certification from the Department of the Army, that the veteran's July 1946 enlistment, which gave rise to the petitioner's DIC entitlement, was service in the New Philippine Scouts under section 14 of the 1945 Recruitment Act. The petitioner has not demonstrated entitlement to a writ from this Court compelling a different conclusion, because, as concluded in parts A., B., and C., above, she has not shown that she lacks adequate alternative remedies for challenging VA's or the Department of the Army's classification of the veteran's service. Therefore, based on the pleadings before the Court, the petitioner has not demonstrated that VA wrongly applied 38 U.S.C. § 107(b). The petition for an extraordinary writ as to that claim thus must also be denied.

## III. CONCLUSION

Based upon the foregoing analysis, the Court holds that the petitioner has failed to satisfy the requirements for entitlement to an extraordinary writ under 28 U.S.C. § 1651(a) and *Erspamer, supra.* Accordingly, the petition for an extraordinary writ is denied.